

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE:<br>Lee Holt Judd,<br>      Debtor.<br><br>ROBERT F. ANDERSON, Trustee,<br>      Appellant,<br><br>vs.<br><br>SUNTRUST MORTGAGE, INC., and<br>EMC Mortgage Corporation, as Servicer for<br>Citibank, N.A., as Trustee for<br>Certificateholders of Bear Stearns Asset<br>Backed Securities Trust 2007-SD-3, Asset<br>Backed Securities Series 2007-SD3,<br>      Appellees. | § § § § § § § § § § § § § § § § § §  CIVIL ACTION NO. 6:09-cv-02540-HFF |

## MEMORANDUM OPINION AND ORDER

**I. INTRODUCTION**

This is a bankruptcy appeal. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 158(a). Trustee Robert F. Anderson (Trustee) appeals the Bankruptcy Court's order and judgment in favor of SunTrust Mortgage, Inc. (SunTrust), and EMC Mortgage Corporation (EMC) (collectively, Lenders), in which the Bankruptcy Court determined that, under Florida law, constructive notice prevents Trustee from using his strong-arm powers to avoid Lenders' mortgages. Finding this decision to be dispositive, the Bankruptcy Court did not reach the merits of the parties' remaining arguments. Having carefully reviewed the briefs, the record, and the applicable law, it

is the judgment of the Court that the order and judgment of the Bankruptcy Court be reversed and this case be remanded to the Bankruptcy Court to consider the parties' other contentions in the first instance.

## II.  FACTUAL AND PROCEDURAL HISTORY

This appeal involves real property located in Key Largo, Florida (the Property). The material facts are undisputed.

Around February 10, 2005, Debtor and Sarepta P. Wilson obtained financing to acquire the Property through notes secured with a first and second mortgage to American Home Mortgage Acceptance, Inc., for $744,800 and $93,100 respectively. Both mortgages were recorded on March 3, 2005, in the land records of Monroe County, Florida. On or about March 24, 2005, Debtor executed a mortgage on the Property to secure a note for $200,000 in favor of Lillian S. Maresch and a separate mortgage on the Property to secure a note for $198,000 in favor of Van and Sarepta P. Wilson. Both mortgages were recorded on November 2, 2005. In March 2006, a judgment of $475,962.18 was entered in favor of Marin Reed and Mary Reed against the Debtor. The judgment was recorded on March 30, 2006.

On April 27, 2006, Debtor executed a Warranty Deed conveying the Property to her father, John T. Holt (Debtor's father). Debtor's father financed the acquisition in part by borrowing $910,000 from SunTrust, evidenced by a note and secured by a mortgage dated April 27, 2006, which was subsequently assigned to EMC (the EMC Mortgage). Debtor's father borrowed an additional $260,000 from Defendant SunTrust, evidenced by a note and secured by a mortgage dated April 27, 2006 (the SunTrust Mortgage).

Debtor filed for Chapter 11 relief on May 4, 2006. On that date, the deed from Debtor to Debtor's father, the EMC Mortgage, and the SunTrust Mortgage had not been recorded, and proceeds from the sale were in the process of being transferred to satisfy the four mortgages of record.[1] The deed from Debtor to Debtor's father, the EMC Mortgage, and the SunTrust Mortgage were recorded on June 8, 2006. Subsequently, during the same month, all four of Debtor's mortgages and the judgment lien were released.

The bankruptcy case was converted to Chapter 7 in May 2007.[2] On September 29, 2009, Trustee filed this adversary proceeding with respect to the Property, bringing two claims of relief against Debtor's father, SunTrust, and EMC. The Bankruptcy Court entered default judgment against Debtor's father on March 13, 2008. After the entry of default judgment, the Bankruptcy Court approved Trustee's sale of the Property for $417,500 and ordered that the liens of SunTrust and EMC would attach to the net proceeds of the sale. As a result, only Trustee's claims against Lenders were presented to the Bankruptcy Court for resolution. The parties submitted a joint stipulation of facts. Trustee and Lenders filed motions for summary judgment. Trustee argued that Lenders' interest in the Property was subordinate to Trustee's interest pursuant to 11 U.S.C. § 544(a)(3) and Fla. Stat. 695.01. Among other defenses, Lenders argued that Trustee's status as hypothetical bona fide purchaser is defeated by Trustee's constructive notice of the SunTrust and EMC Mortgages derived through the unsatisfied liens of record.

---

[1] Funds to satisfy two mortgages were wired on the same day that Debtor filed bankruptcy. The parties did not stipulate and the record does not reveal the exact time at which they were wired. Funds for the two remaining mortgages were wired the following day.

[2] The Bankruptcy Code sections at issue in this case, 11 U.S.C. §§ 544 and 550, apply equally to Chapter 7 and Chapter 11 bankruptcies. 11 U.S.C. § 103(a).

The Bankruptcy Court ruled in favor of Lenders. It held that, under Florida law, the existence of unreleased liens in the public land records puts a subsequent purchaser on notice to "inquire to the point of finality about the status of the encumbrances of record and any related facts." (Order 13.) According to the Bankruptcy Court's reasoning, because several liens were recorded and unreleased, a subsequent purchaser would have been on notice to contact the mortgagees and judgment creditor. From this the court concluded that, as a matter of law, bona fide purchaser status was unavailable to Trustee when an unreleased lien exists in the land records.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), made applicable by Fed. Bankr. P. 7056.

The parties have jointly stipulated the facts. The Court reviews a bankruptcy court's findings of law de novo. *Mason & Dixon Lines, Inc. v. First Nat. Bank of Boston*, 86 B.R. 476 (M.D.N.C. 1988), *aff'd*, 883 F.2d 2 (4th Cir. 1989).

## IV. CONTENTIONS OF THE PARTIES

Trustee asserts that the Bankruptcy Court erred in determining that Trustee's status as bona fide purchaser without knowledge was defeated by perfected and unreleased encumbrances on the record when inquiry regarding the status of those mortgages would have revealed that the property remained subject to significant outstanding obligations. Lenders, however, argue that, even if the Bankruptcy Court erred in holding that bona fide purchaser status was unavailable as a matter of Florida law, they should be subrogated to the position of the unreleased liens of record which were satisfied by Lenders' funds. Lenders argue additional alternative bases for affirmation, contending

that § 550 of the Bankruptcy Code affords them valid defenses and that permitting Trustee to retain the proceeds from the sale of the Property and the benefit of the cancellation of the liens would result in unjust enrichment and would be contrary to the purpose of Bankruptcy Code § 550, which is to restore the estate to its pre-transfer condition, not to place it in a better position than if the transfer had not occurred.

V.     **DISCUSSION AND ANALYSIS**

A bankruptcy trustee's interest in property is determined by statute under 11 U.S.C. § 544(a)(3):

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Pursuant to § 544(a), a trustee occupies the status of an ideal judicial lien creditor or bona fide purchaser without actual knowledge of any outstanding claim, lien, or equity, without regard to the actual knowledge or notice of any actual creditor, the debtor, or the trustee. *In re Chateau Royale*, 6 B.R. 8, 10 (Bankr. N.D. Fla. 1980); *see also Crestar Bank v. Neal* (*In re Kitchin Equip. Co. of Virginia, Inc.*), 960 F.2d 1242, 1245 (4th Cir. 1992) ("A trustee . . . , without regard to any

knowledge, is empowered to avoid any transfer of property of the debtor or any obligation of the debtor that is voidable by a hypothetical lien creditor.").

Although a bankruptcy trustee is innocent of knowledge as a matter of law, the definition of a trustee's rights as bona fide purchaser is a matter of state property law. *Am. Indus. Leasing Co. v. Searles* (*In re Ludlum Enters., Inc.*), 510 F.2d 996, 999 (5th Cir. 1975). Thus, state law determines what liens are perfected as against a bankruptcy trustee at the time of the filing or "whether even a hypothetical bona fide purchaser could exist under the facts." *LR Partners L.L.C. v. Steiner* (*In re Steiner*), 251 B.R. 137, 142 (Bankr. D. Ariz. 2000) (citing *In re Washburn & Roberts, Inc.*, 795 F.2d 870 (9th Cir. 1986)).

The parties agree that, for purposes of state law questions, Florida law governs this case. Under Florida law, "[s]uccessors in title take title subject to those interests of which they have notice." *DGG Dev. Corp. v. Estate of Capponi*, 983 So.2d 1232, 1234 (Fla. 5th Dist. Ct. App. 2008). Although a bankruptcy trustee is by law innocent of actual knowledge, "the trustee's constructive notice of such an interest does not insulate the trustee because, in such a case, the interest could not be defeated by a bona fide purchaser." *S. Motor Co. of Dade County v. Carter-Pritchett-Hodges, Inc.* (*In re MMH Auto. Group*), 385 B.R. 347, 369-70 (Bankr. S.D. Fla. 2008).

Florida's recording statute states,

> No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser.

Fla. Stat. § 965.01(a)(1).

6

Florida courts interpret the recording statute liberally. *In re Chateau Royale*, 6 B.R. at 11. A potential purchaser is charged with constructive notice not only of recorded instruments but also of instruments mentioned on the face of the records. *Sapp v. Warner*, 141 So. 124, 129 (Fla. 1932). Likewise, where information on the face of public land records would raise a question in the mind of a reasonable purchaser as to whether another interest exists, the subsequent purchaser is held to be on notice of such an interest. *Id.; LaGrow v. Flagship Bank of Orlando*, 400 So.2d 123, 125 (Fla. 5th Dist. Ct. App. 1981). This is so because

> any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained.

*Sapp*, 141 So. at 129.

Implied actual notice, or inquiry notice, is embraced within constructive notice in Florida. *Id.* (describing implied actual notice as a "class" of constructive notice); *Sickler v. Melbourne State Bank*, 159 So. 678, 679 (Fla. 1935) ("[O]ne who has either actual or constructive information and notice sufficient to put him on inquiry is bound . . . to make that inquiry which such information or notice appears to direct should be made."). Thus, Trustee, "as hypothetical bona fide purchaser, is subject to the duty imposed by Florida's inquiry rule." *Grant v. Davis* (*In re CJW Ltd., Inc.*), 172 B.R. 675, 685 (Bankr. M.D. Fla. 1994).

The question in this case is whether the existence of a perfected mortgage of record puts a purchaser on inquiry notice with regard to any information that would be discovered if the purchaser were to contact the mortgagee to determine the status of the mortgage. In the absence of Florida law on this precise issue, the Bankruptcy Court found instructive Georgia law as interpreted by the Court

7

of Appeals for the Eleventh Circuit, according to which an unreleased lien of record places a purchaser on inquiry notice, eliminating the possibility that a bona fide purchaser could take title superior to interests derived from the unreleased lien. *Gordon v. NovaStar Mortgage, Inc.* (*In re Hedrick*), 524 F.3d 1175, 1183 (11th Cir. 2008) (citing *Rossville Fed. Sav. & Loan Ass'n v. Chase Manhattan Bank*, 154 S.E.2d 243 (Ga. 1967)).[3]

When a state's highest court has not ruled on a question of state law, a federal court "must apply what it finds to be the state law after giving proper regard to relevant rulings of other courts of the State." *Castillo v. Emergency Medicine Assocs., P.A.*, 372 F.3d 643, 648 (4th Cir. 2004). Having reviewed relevant Florida decisions, the Court concludes that Florida courts are unlikely to follow the *Rossville* court and adopt a rule denying bona fide purchaser status to any subsequent purchaser when an unreleased lien exists in the public land records.

In *Starlines International Corporation v. Union Planters Bank, N.A.*, the Florida Court of Appeals dealt with a case in which a properly recorded mortgage was unreleased at the time of sale. 976 So.2d 1172, 1174 (Fla. 4th Dist. Ct. App. 2008). The court did not find that a subsequent purchaser must contact the holder of an unreleased lien in order to be a bona fide purchaser as the rule of *In re Hedrick* would demand. In *Starlines*, two notes, Note 1 and Note 2, were both unrecorded. *Id.* at 1173. The unreleased mortgage referred to Note 2 and its covenants and agreements. *Id.* at 1174. Note 2, in turn, contained a dragnet clause stating that both Note 2 and all other liabilities of the mortgagor to the bank were secured by the mortgage. *Id.* However, no

---

[3] Because the Court concludes that the Florida inquiry rule does not disallow bona fide purchaser status when any unreleased, perfected lien exists against the property and thus does not permit Trustee's status as bona fide purchaser to be defeated by means of notice, the Court does not reach the question of whether such a broad inquiry notice rule conflicts with the language of § 544, which accords bona fide purchaser status to the trustee "without regard to any knowledge of . . . any creditor." 11 U.S.C. § 544(a).

8

recorded document specifically mentioned Note 1. *Id.* at 1177. Some evidence indicated that the subsequent purchaser asked the mortgagor whether other debt existed and was told that it did not. *Id.* The court held that in those circumstances a genuine issue of fact precluded summary judgment as to whether the subsequent purchaser was on implied actual notice of the existence of Note 1. *Id.* Thus, the court necessarily decided that the existence of an unreleased mortgage of record did not per se defeat bona fide purchaser status for a subsequent purchaser. Even information on the face of the record indicating that additional liens could exist between the same parties was not enough for the court to impute notice to the subsequent purchaser as a matter of law. *See also Mukamal v. Hernandez* (*In re All Star Mortgage*), 411 B.R. 774, 780 (Bankr. S.D. Fla. 2009) (holding that the trustee could not have been on notice of an unrecorded note and mortgage because recorded lis pendens did not refer to note or mortgage or mention the holder's name, even when creditor who recorded lis pendens knew of note and mortgage).

Although Florida courts could adopt a rule of notice comparable to the Georgia rule, the rule appears inconsistent with current Florida law. Moreover, the existence of unreleased liens provided less notice of the Lenders' mortgages in this case than was available to subsequent purchasers in *Starlines*. Nor have Lenders cited any Florida cases in which a court required a subsequent purchaser to contact the holders of unreleased liens as a matter of inquiry duty. Accordingly, summary judgment in favor of the Lenders on this issue was improper.

## VI. CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court that the Bankruptcy Court's decision be **REVERSED** and this case be **REMANDED** to the Bankruptcy Court to consider the parties' other contentions in the first instance.

**IT IS SO ORDERED**.

Signed this 5th day of August, 2010, in Spartanburg, South Carolina.

                                          s/ Henry F. Floyd
                                          HENRY F. FLOYD
                                          UNITED STATES DISTRICT JUDGE